THE STATE OF IOWA, Appellee, v. THOMAS SHERIDAN, Appellant.

Malicious Mischief: WRONGFUL SEARCH: ADMISSION OF EVIDENCE
1 OBTAINED THEREBY. Evidence obtained by a search of defendant's house under a search warrant unlawfully issued for the sole purpose of discovering the same is inadmissible against defendant, under article 1, section 8 of the Constitution.

Impeachment of Witness.   A witness cannot be impeached on a collateral or immaterial matter.

*Appeal from Lyon District Court.*—HON. GEO. W. WAKE-
FIELD, Judge.

• FRIDAY, OCTOBER 9, 1903.

INDICTMENT for malicious mischief.   Verdict and judg-
ment of guilty, and defendant appeals.—*Reversed.*

*E. C. Roach* and *E. Y. Greenleaf* for appellant.

*C. W. Mullan*, Attorney General, and *C. A. Van
Vleck*, Assistant Attorney General, for the State.

WEAVER, J.—The defendant, an ice dealer, was
charged with having maliciously injured or destroyed a
quantity of ice belonging to a competitor in business by
putting upon it a large quantity of salt.   The prosecuting
witness claiming that his ice had been maliciously des-
troyed, and, having been informed that appellant bought
a barrel of salt from a local merchant a day or two before
that date, filed a preliminary information before a justice
of the peace, and caused a warrant to issue for the ap-
pellant's arrest.   At the same time the prosecuting wit-
uess filed an affidavit alleging the purchase of salt by
appellant, and stating his belief that said salt was used in
perpetrating the act of malicious mischief above men-
tioned, and that "said salt, or the barrel in which it was
contained," was in the possession of appellant at his resi-
dence in Rock Rapids.   On these allegations he asked for
a warrant to search the appellant's residence and seize the
described articles if found.   A search warrant was there-
upon issued, and the officer, in executing it, claimed to
have found in the cellar of appellant's residence an empty
salt barrel.   On the trial in the district court the officer,
as a witness for the state, identified the barrel so found,

and said article was then offered and admitted in evidence over appellant's objection. The correctness of this ruling is the principal question discussed by counsel. Our state Constitution (article 1, section 8) guarantees the security of the people in their right to be exempt in their persons, houses, papers, and effects from unreasonable searches and seizures. Section 9 of the same article provides that no person shall be deprived of life, liberty, or property without due process of law. Under these provisions we have lately held that the admission of evidence procured by wrongful and forcible examination, by the officers of the state, of the person of one accused of crime, was reversible error. *State v. Height*, 117 Iowa, 650. The principle involved was there very thoroughly discussed, and the authorities carefully reviewed, and, so far as the same are applicable here it is unnecessary to again present them. We shall therefore confine our inquiry upon this branch of the case to the point whether the question now before us falls within the scope of the doctrine announced in that decision.

*1. WRONGFUL search: admission of evidence obtained thereby.*

It is conceded by the Attorney General that the search warrant was issued without the authority of law, and that the search and seizure made thereunder were wrongful. It was also shown by the evidence upon the trial, and without dispute, that the search warrant was asked for, procured, and served for the sole "purpose of obtaining testimony" against the appellant. For the purposes of this appeal we may admit it has often been held that the mere fact that evidence has been developed by the wrongful act or trespass of an officer or any other person will not necessarily render it inadmissible, but we are confronted by the further fact that the evidence objected to was obtained by a palpable abuse of judicial process. In the *Height Case*, we said that, while an officer may properly testify to criminating facts discovered by him in the execution of a warrant lawfully issued, yet "a party to a

suit can gain nothing by virtue of violence under the pretense of process, nor will a fraudulent or unlawful use of process be sanctioned by the courts.   In such cases parties will be restored to the rights and positions they possessed before they were deprived thereof by the fraud, violence, or abuse of legal process.   *   *   *.   The search was for the mere purpose of securing evidence by an invasion of the private person of the defendant, and we think there is no consideration whatever which will justify it."   To the same effect, see *Reifsnyder v. Lee*, 44 Iowa, 101.   The last quoted clause applies with equal force to the present case.   The search was for the mere purpose of securing evidence by the invasion of the private residence of the defendant.   The sacredness of his person against such an act is protected by no higher or stronger guaranty than that of his home, his papers, and effects.   In *Boyd v. The United States*, 116 U. S. 616 (6 Sup. Ct. Rep. 524, 29 L. Ed. 746), the constitutional prohibition of unreasonable searches and seizures is said to be closely related to the immunity which the citizen enjoys against being compelled to bear witness against himself, and it is there held that the compulsory production by the defendant of an article to be used in evidence against him in a prosecution for crime or enforcement of a penalty is, in effect, a violation of that constitutional provision.   If in that case, instead of ordering the defendant to produce the desired article or paper, the court, without authority of law, had issued a search warrant, under which the sheriff invaded the private room or safe of the defendant, and thus obtained the means of securing his conviction, would not the violation of the constitutional guaranty have been as palpable, and the admission of the evidence thus secured as clearly erroneous, as was the method actually employed?

It is said, however, that the court will not inquire how the offered evidence has been procured, and, even if obtained by a search warrant in violation of the defend-

ant's constitutional or legal rights, it will still be admitted, if otherwise competent; and that defendant's only redress is an action for damages against the officer or person committing the trespass. It is true there are cases giving seeming support to this doctrine, but most of them, when examined, will be found to be instances in which the incriminating evidence has been discovered by persons acting without color of authority, or by officers as the incidental result of the service of a warrant of arrest or other writ or process legally issued. None can be found, we think, where the state has been permitted to obtain a search warrant in confessed violation of law, and thereby take papers or property from the home of the man suspected of the crime, and use the matter thus procured in securing his conviction. To so hold is to emasculate the constitutional guaranty, and deprive it of all beneficial force or effect in preventing unreasonable searches and seizures. We think the evidence should have been excluded.

II. One Haley was sworn and examined as a witness for the state. He was later recalled on behalf of the defendant. On cross-examination he was asked by counsel for the state: "Q. Did you have any talk with Ed Tressler in the privy back of Wagner's saloon, while the grand jury was in session at this term of court, wherein you told Ed Tressler that you knew all about that ice deal, and that you would tell the whole thing, whether your brother Jack was against you or not? Q. Didn't you state in my office, and in the presence of Ed Tressler, while the grand jury was in session, and just before you were called as a witness before the grand jury, that you knew all about the ice deal, and you would be willing to tell it?" The appellant's objection to these questions as being immaterial and not cross-examination were overruled, and the witness answered each in the negative. The state was then permitted to recall Tressler, who testified, over timely objections,

2. IMPEACHMENT of witness.

that Haley did make the statements referred to. This, we think, was error. It is an elementary rule that a witness cannot be impeached upon a collateral or immaterial matter. Such was clearly the character of this testimony. It had no relevance to the matters stated by the witness in his testimony in chief, and therefore was not cross-examination. The alleged statements were not made by the appellant, nor by the witness in his presence. They were, in effect, a declaration that the witness knew "all about the ice deal," and would tell the truth about it. Assuming that he so said, it had no tendency direct or indirect to incriminate the appellant. The state would not have been entitled to prove it as a part of its case. It was both collateral and immaterial, and should have been excluded.

The judgment of the district court is reversed, and cause remanded for a new trial.—REVERSED.