# UNITED STATES *v.* HALSTEAD.*

---

CRIMINAL LAW; PLEAS IN ABATEMENT; CONSTITUTIONAL LAW; IMMUNITY
FROM CRIMINAL PROSECUTION; EVIDENCE.

1. Pleas in abatement to an indictment based upon disclosures in the books and papers of the accused, examined and used by the grand jury in investigating criminal charges against him, were *held* sufficient in form, where it appeared from the pleas that the evidence was material to the finding of the indictment, although they did not allege that there was no other evidence before the grand jury

---

*Criminal law.*—As to the admissibility against defendant of documents or articles taken from him, see notes to *State* v. *Edwards*, 59 L.R.A. 467; *State* v. *Fuller*, 8 L.R.A.(N.S.) 762; and *People* v. *Campbell*, 34 L.R.A. (N.S.) 58.

sufficient to warrant the indictment; as the indictment, if so de-
fective, could be amended.

2. The constitutional rights of the accused in a criminal proceeding are
   not infringed by the use by the grand jury, in the investigation of
   the charges contained in the indictment, of his books and papers
   procured from his receiver or trustee in bankruptcy, to whom they
   had been delivered under an unconditional order of the bankruptcy
   court, and which books and papers contained information with re-
   spect of the matters charged in the indictment against him; and
   a demurrer by the prosecution to pleas in abatement, setting forth
   such facts, should be sustained.   (Construing 4th and 5th Amend-
   ments of the Federal Constitution.)

3. The use of the books and papers of a bankrupt, in the hands of his
   receiver or trustee in bankruptcy, as evidence against him in a
   criminal proceeding for embezzlement and false pretenses, based
   upon the disclosures in such books and papers, is not prohibited
   by sec. 860, Rev. Stat., that section being intended as. a protection
   to parties to suits against criminal proceedings, other than perjury,
   who file pleadings in the case, sworn or unsworn, or are compelled
   to submit to an examination as witnesses therein and produce docu-
   ments as evidence.   (Distinguishing *Frisby* v. *United States*, 35 App.
   D. C. 513, and *Frisby* v. *United States*, ante, 22.)

No. 2335.   Submitted November 10, 1911.   Decided January 2, 1912.

HEARING on an appeal by the United States from a judg-
ment of the Supreme Court of the District of Columbia, sit-
ting as a criminal court, sustaining pleas in abatement to
and quashing an indictment charging the accused with the
offenses of obtaining money by false pretenses and embezzle-
ment.                                                 *Reversed.*

The COURT in the opinion stated the facts as follows:

The United States appeal from a judgment of the supreme
court of the District of Columbia sustaining pleas in abatement
to, and quashing an indictment.

The indictment, presented October 3d, 1910, contained seven
counts, charging Griffin Halstead (hereinafter called defend-
ant) with the offense of obtaining money by false pretenses,

and of embezzlement. Defendant entered two pleas in abatement.

The first alleged the following facts substantially: In a proceeding in bankruptcy against defendant, an order was entered January 19, 1910, appointing a receiver and directing him to take possession of and hold, until the appointment of a trustee, the office of the defendant, together with all of his books, papers, records, and assets of every description. That said receiver took possession of said books, papers, and records which had been used by the defendant in the conduct of his business, and which contained the record and accounts with respect to the matters charged in the indictment against him. That prior to May 7, 1910, without knowledge or consent of defendant, said books, papers, and records were produced before and examined by the grand jury, and used against defendant in the investigation of the charges contained in said indictment. He prayed that the indictment be quashed because said records were used in evidence to the prejudice of defendant, and in violation of the immunities guaranteed by the Constitution.

The second plea was similar, but contained the additional allegation that after the appointment of the receiver,—to wit, April 13, 1910,—a trustee in bankruptcy was duly elected, confirmed, and qualified, to whom the receiver delivered the said records, books, and papers.

*Mr. Clarence R. Wilson,* United States District Attorney, for the appellant.

*Mr. H. Prescott Gatley* and *Mr. Samuel Maddox* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

One ground of demurrer raises a question of form, another goes to the merits.

1. The exception on the ground of form is that the pleas

are insufficient because they do not allege that there was not ample evidence before the grand jury, sufficient to warrant the indictment, other than defendant's books and papers.

There is a conflict of authority upon this proposition, but we do not find it necessary to enter upon its discussion. We think it sufficiently appears from the pleas that the evidence was material to the finding of the indictment. This would seem to be all that is necessary. Moreover, it is a defect that could be amended, and to reverse therefor would serve no useful purpose.

2. The second assignment of error is that the taking of defendant's books by the receiver, and their use before the grand jury in procuring the indictment, did not infringe the defendant's constitutional rights.

The provisions of the Constitution relied on by defendant are found in the 4th and 5th Amendments. The 4th Amendment declares that "the right of the people to be secure in their persons, houses, and effects against unreasonable searches and seizures shall not be violated."

The 5th contains this provision, among others: "Nor shall any person be compelled in any criminal case to be a witness against himself."

There has been no unreasonable or unlawful seizure of the defendant's books and papers. They were taken possession of in obedience to the order of the court sitting in bankruptcy, in the exercise of its unquestionable authority under the statute regulating bankruptcy proceedings. Nor has the defendant been compelled to testify, or to personally produce his private books and papers in evidence, against himself. Hence there has been no direct and express violation of the constitutional provisions.

The contention on behalf of the defendant is that the use of his books and papers, obtained in a civil proceeding, as evidence against him in a criminal proceeding, is tantamount to their unreasonable seizure, as well as compelling him to give evidence against himself in a criminal case; and therefore within the prohibitions of both amendments to the Constitution. As de-

cisive of this contention, counsel rely upon the case of *Boyd* v. *United States,* 116 U. S. 616, 29 L. ed. 746, 6 Sup. Ct. Rep. 524.

The question decided in that case has been thus succinctly stated in a later case, the opinion in which was delivered by Mr. Justice Day, in the following words: "That case presents the question whether one can be compelled to produce his books and papers in a suit which seeks the forfeiture of his estate, on pain of having the statements of government's counsel as to the contents thereof taken as true and used as testimony for the government. The court held in an opinion by Mr. Justice Bradley that such procedure was in violation of both the 4th and 5th amendments; the chief justice and Justice Miller held that the compulsory production of such documents did not come within the terms of the 4th Amendment as an unreasonable search or seizure, but concurred with the majority in holding that the law was in violation of the 5th Amendment." *Adams* v. *New York,* 192 U. S. 585, 597, 48 L. ed. 575, 580, 24 Sup. Ct. Rep. 372. In that case, under a search warrant, the officers had seized certain "policy slips" claimed to have been used by the defendant in violation of the law. They also seized, at the same time, certain private papers. These papers, though not included in the warrant for search and seizure, became important evidence as tending to show the custody by the party of the policy slips, with knowledge. They were admitted in evidence over the objection of the defendant, in proving his guilt. The competency of the evidence was sustained, the court being of the opinion that the question was not governed by the decision in the Boyd Case. In reviewing many state cases in line with the conclusion, the opinion quotes the following language from the opinion in *State* v. *Flynn,* 36 N. H. 64: "Evidence obtained by means of a search warrant is not inadmissible, either upon the ground that it is in the nature of admissions under duress, or that it is evidence which the defendant has been compelled to furnish against himself, or on the ground that the evidence has been unfairly or illegally obtained, even if it appears that the search warrant was illegally issued."

Expressly disclaiming any intent to detract from the authority of the decision in *Boyd's Case,* its authority was limited to the question actually involved and decided.    In concluding the discussion of that branch of the case, it was said:    "The right of seizure of lottery tickets and gambling devices, such as policy slips, under such warrants, requires no argument to sustain it at this day.    But the contention is that, if in the search for the instruments of crime, other papers are taken, the same may not be given in evidence.    As an illustration, if a search warrant is issued for stolen property, and burglars tools be discovered and seized, they are to be excluded from testimony by force of these amendments.    We think they were never intended to have that effect, but are rather designed to protect against compulsory testimony from a defendant against himself in a criminal trial, and to punish wrongful invasion of the home of the citizen, or the unwarranted seizure of his papers and property, and to render invalid legislation or judicial procedure having such effect."

The facts in the case at bar bring it, in our opinion, within the rule declared in the case last cited.    Here the possession of the books and papers was lawfully acquired.    Defendant's business brought him within the scope of the bankruptcy act, provisions of which expressly authorized the delivery of all his effects to the receiver, temporarily, and later to the trustee.    No condition was annexed to the order of delivery, as seems to have been done by the courts in some cases, that they should not be used as evidence against the bankrupt in any criminal case.    We attach no importance to the omission of such a condition in the order made; nor are we prepared to say that the omission to demand such a condition is equivalent to the consent to the delivery of possession.    The transfer of the bankrupt's property was necessary to the administration of the bankruptcy law which declared it, and the order was one which he was compelled to obey.

In a recent case a conditional order of the kind mentioned had been made, but the bankrupt refused obedience.    He announced his willingness to allow an inspection of the books if he could save his right that the books should not be used against

him in a criminal trial; but excepted to the order, on the ground that no statute protected him from the knowledge gained from the books being used to find and get evidence that might be used against him in a criminal prosecution.   He relied upon the 5th Amendment, and the case of *Counselman* v. *Hitchcock,* 142 U. S. 547, 35 L. ed. 1110, 3 Inters. Com. Rep. 816, 12 Sup. Ct. Rep. 195.   The circuit court of appeals certified to the Supreme Court the question whether the order was a proper exercise of the authority of the bankruptcy court.   In answering the question affirmatively, Mr. Justice Holmes, speaking for the court, said:   "If the order to the bankrupt, standing alone, infringed his constitutional rights, it might be true that the provisions intended to save them would be inadequate and that nothing short of statutory immunity would suffice.   But no constitutional rights are touched.   The question is not of testimony, but of surrender,—not of compelling the bankrupt to be a witness against himself in a criminal case, present or future, but of compelling him to yield possession of property that he no longer is entitled to keep.   If a trustee had been appointed, the title to the books would have vested in him by the express terms of section 70, and the bankrupt could not have withheld possession of what he no longer owned, on the ground that otherwise he might be punished.   That is one of the misfortunes of bankruptcy if it follows crime.   The right not to be compelled to be a witness against one's self is not a right to appropriate property that may tell one's story.   As the bankruptcy court could have enforced title in favor of the trustee, it could enforce possession *ad interim* in favor of the receiver."   *Re Harris,* 221 U. S. 274–279, 55 L. ed. 732–735, 31 Sup. Ct. Rep. 557.

This case is relied on as supporting defendant's contention, by reason of the concluding sentence of the opinion, which reads thus:   "In the properly careful provision to protect him from use of the books in aid of prosecution, the bankrupt got all that he could ask."   We think that the point decided is to be found in the language first quoted.   As indicated therein, if the order had been to produce the books in a criminal investigation pending before the grand jury, and they contained matter that might

incriminate himself, he would have come under the protection of the 5th Amendment, and nothing short of statutory immunity would then suffice.    But the order was to deliver them as property the title to which had passed from him, and if as an incident of that change of property and possession they should come to be used as evidence in a criminal prosecution, it is one of the misfortunes of bankruptcy.    As was said:  "The right not to be compelled to be a witness against one's self is not a right to appropriate property that may tell one's story."    In a recent case before the circuit court of appeals for the first circuit, the books of a bankrupt, surrendered without any condition in the order in an involuntary proceeding in bankruptcy, were held to be competent evidence in a prosecution of the bankrupt for conspiracy to conceal his assets.    After stating the facts, Judge Putnam said for the court:  "The proposition of the plaintiffs in error in this particular is not within any case decided by this court, or any case that is authoritative for it.    We can also add that it is fully covered by *Adams* v. *New York,* 192 U. S. 585, 48 L. ed. 575, 24 Sup. Ct. Rep. 372, and by our opinion and decision in *New York C. & H. R. R. Co.* v. *United States,* 91 C. C. A. 519, 165 Fed. 833, 843, where *Adams* v. *New York* is applied, and where also the true construction and limitations applicable to *Boyd* v. *United States,* 116 U. S. 616, 29 L. ed. 746, 6 Sup. Ct. Rep. 524, are explained.    We are unable to find any error so far as this proposition is concerned."    *Kerrch* v. *United States,* 96 C. C. A. 258, 171 Fed. 366–369.    The court of appeals of Maryland, on a like state of facts, decided to the contrary.    *Blum* v. *State,* 94 Md. 375, 56 L.R.A. 322, 51 Atl. 26.    Another case relied on by the defendant discloses a very different state of facts.    *State* v. *Sheridan,* 121 Iowa, 164, 96 N. W. 730.    It is unnecessary to review those decisions, as in our opinion the question is settled authoritatively for us by the Supreme Court of the United States in the cases above cited.

3. Another contention of the defendant is that the introduction of the books and papers obtained in the bankruptcy proceeding is prohibited by section 860, Rev. Stat., U. S. Comp. Stat. 1901, p. 661, which reads as follows:

"No pleading of a party, nor any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country, shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture.   *   *   *"

In support of this contention the following cases are relied on. *Johnson* v. *United States,* 18 L.R.A.(N.S.) 1194, 89 C. C. A. 508, 163 Fed. 30; *Frisby* v. *United States,* 35 App. D. C. 513. In the first of those cases, this section was held to render incompetent as evidence in a criminal case the schedule filed by the bankrupt in compliance with the procedure in such cases. These were held to be analagous to pleadings in ordinary cases. In *Frisby's Case* the paper offered in evidence was attached to and made a part of defendant's answer in an equity cause. It is not claimed that the books and papers in this case constituted pleadings in the bankruptcy proceeding, but it is contended that they were obtained from the defendant by means of a judicial proceeding. Certainly they were obtained as a result, or incident rather, of a judicial proceeding. But that proceeding was not even instituted to determine the title to the same, or to recover their possession. They were not produced as evidence in any hearing, or by way of discovery of any fact in issue. In common with all other effects of the bankrupt the title passed to the receiver first, and then finally to the trustee, by the express terms of the statute, and the order for delivery followed in the necessary execution of the statute and the administration of the estate thereunder. Section 860 was intended as a protection to parties who file pleadings in a cause, sworn or unsworn, or are compelled to submit to examination as witnesses therein and produce documents to be used as evidence. It would be a strained and unnatural construction to make it apply to a case like this.

To do so would go far beyond the object of the section deemed, when enacted, as in accord with sound public policy, and convert it into a shelter for fraudulent and criminal bankrupts.

Being of the opinion that it was error to overrule the de-

murrer to the pleas, the judgment will be reversed, with direction to sustain the demurrer to the pleas and take such further proceedings in the case as may not be inconsistent with this opinion.   It is so ordered.                    *Reversed.*