(July 2, 1918.)

STATE, Respondent, v. CHARLES ANDERSON, Appellant.

[174 Pac. 124.]

CONSTITUTIONAL LAW — EVIDENCE — INTOXICATING LIQUORS — CRIMINAL LAW.

    1.  Evidence otherwise competent and relevant to the issues is not rendered inadmissible by reason of its having been disclosed by an unlawful search or obtained by an unlawful seizure.

    2.  Under Rev. Codes, sec. 7994, a judgment of an absolute imprisonment in a criminal case, coupled with the payment of a fine and costs, may also contain a direction that the defendant be imprisoned until the fine and costs have been satisfied.

    [As to power to imprison criminal until fine is paid, see note in 12 Am. St. 202.]

APPEAL from the District Court of the First Judicial District, for Shoshone County. Hon. Wm. W. Woods, Judge.

Appeal from judgment of conviction for unlawful transportation of intoxicating liquors in a prohibition district. *Affirmed.*

Horning & McEvers and C. L. Heitman, for Appellant.

The court erred in allowing testimony to be offered by the state relative to the search of appellant's automobile without a search-warrant or a warrant for appellant's arrest. (*Weeks v. United States,* 232 U. S. 383, Ann. Cas. 1915C, 1177, 34 Sup. Ct. 341, 58 L. ed. 652, L. R. A. 1915B, 834; *Levy v. Superior Court,* 105 Cal. 600, 38 Pac. 965, 29 L. R. A. 811, 818; *State v. Edwards,* 51 W. Va. 220, 41 S. E. 429, 59 L. R. A. 465; *United States v. Mounday,* 208 Fed. 186; *Boyd v. United States,* 116 U. S. 616, 6 Sup. Ct. 524, 29 L. ed. 746; *Lippman v. People,* 175 Ill. 101, 51 N. E. 872.)

The trial court erred in imposing a sentence of absolute imprisonment for thirty days, and a conditional additional sentence of imprisonment dependent upon the failure of appellant to pay the fine of $400 and costs. (*Ex parte Rosenheim,* 83 Cal. 388, 23 Pac. 372; *People v. Hamberg,* 84 Cal. 468, 475, 24 Pac. 298; *People v. Brown,* 113 Cal. 35, 45 Pac. 181; *Reese v. Olsen,* 44 Utah, 318, 139 Pac. 941; *Roberts v. Howells,* 22 Utah, 389, 62 Pac. 892.)

T. A. Walters, Atty. Genl., A. C. Hindman and J. P. Pope, Assistants, and H. J. Hull, for Respondent.

If any person, even by an illegal search or seizure, procure possession of any article, the state may, notwithstanding such illegal seizure, use it if necessary as legitimate evidence against the person from whom it was obtained to convict him of a crime. (35 Cyc. 1272, and cases cited; *Shields v. State,* 104 Ala. 35, 53 Am. St. 17, 16 So. 85; 43 Cen. Dig., tit. "Searches and Seizures," sec. 5.)

In Idaho, court may, where statute provides for punishment by fine, or by both fine and imprisonment, direct that

the defendant be imprisoned until his fine has been satisfied, at the rate of two dollars per day. (Sec. 7994, Rev. Codes; *People v. Righetti*, 66 Cal. 184, 4 Pac. 1063, 1185; *People v. Sage*, 13 App. Div. 135, 43 N. Y. Supp. 372.)

RICE, J.—An information was filed against appellant, charging him with the crime of transporting intoxicating liquors from the state of Montana into Shoshone county, a prohibition district. Before the cause was called for trial appellant presented a petition to the district court setting forth that he was traveling upon a public highway in Shoshone county in a certain automobile; that one J. D. Foster, a deputy sheriff, and others, forcibly, unlawfully and without a search-warrant, or other warrant, stopped appellant, searched his automobile and seized therein certain intoxicating liquors; that the deputy sheriff "then and there and thereupon" arrested the defendant and took possession of the said liquors. The appellant prayed for an order for the destruction of the intoxicating liquor, and that the same should not be received as evidence against him upon the trial of the cause. The petition was denied. On the trial of the cause appellant objected to the deputy sheriff testifying as to any facts discovered by his search of the automobile, and objected to the reception in evidence of any intoxicating liquors so taken.

It may be conceded that the search of the automobile and the seizure of the liquors in this case was accomplished by a trespass of the deputy sheriff, and was illegal, and that the statute under which he acted, in so far as it attempts to authorize a search and seizure without warrant, is unconstitutional and void. Nevertheless, we think the testimony of the witness and the intoxicating liquors seized were properly admitted.

Evidence otherwise competent and relevant to the issue is not rendered inadmissible by reason of its having been disclosed by an unlawful search or obtained by unlawful seizure. In 1 Greenleaf on Evidence, 15th ed., section 254 (a), it is said: "It may be mentioned in this place that though papers

and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, there is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question.''

The text quoted above is supported by the cases of *Legatt v. Tollervey*, 14 East, 302, 104 Eng. Reprint, 617; *Jordan v. Lewis*, 14 East, 306, 104 Eng. Reprint, 618; *Commonwealth v. Dana*, 2 Met. (Mass.) 329.)

The doctrine has received the approval of the courts of a majority of the states. Among the more recent authorities containing instructive discussions of the question are the following: *Gindrat v. People*, 138 Ill. 103, 27 N. E. 1085; *State v. Fuller*, 34 Mont. 12, 85 Pac. 369, 9 Ann. Cas. 648, 8 L. R. A., N. S., 762; *People v. Campbell*, 160 Mich. 108, 136 Am. St. 417, 125 N. W. 42, 34 L. R. A., N. S., 58; *Commonwealth v. Tibbetts*, 157 Mass. 519, 32 N. E. 910; *Commonwealth v. Tucker*, 189 Mass. 457, 76 N. E. 127, 7 L. R. A., N. S., 1056. See, also, 3 Wigmore on Evidence, sections 2250, 2264, and an exhaustive annotation following the case of *State v. Turner*, in 136 Am. St. 129.

The sentence imposed upon the appellant was as follows: ''That said Charles Anderson be imprisoned in the county jail of Shoshone for the full period of thirty days, and that he be, and he hereby is fined in the sum of $400, and the costs of this prosecution, hereby taxed in the sum of $11.05. It is further ordered, adjudged and decreed, that in the event said defendant shall fail to pay said fine and costs he shall serve the same out in the county jail of Shoshone county at the rate of $2 for each day of twenty-four hours.''

The imposition of the conditional sentence of imprisonment, dependent upon the failure of the appellant to pay a fine of $400 and costs, is assigned as error, for the reason that the court had no such authority where the sentence imposes both imprisonment and fine, and also that in case of failure to pay the fine the imprisonment would then exceed the total im-

prisonment prescribed by law as a penalty for the offense committed.

In considering this question the following sections of the Rev. Codes are material:

"Sec. 7994. A judgment that the defendant pay a fine, or pay costs, or pay both fine and costs, may also direct that defendant be imprisoned until the fine, or costs, or both fine and costs, have been satisfied; specifying the extent of the imprisonment, which cannot exceed one day for every two dollars of the fine, costs, or fine and costs, as the case may be."

"Sec. 7995. A judgment that the defendant pay a fine, pay costs, or pay fine and costs, constitutes a lien in like manner as a judgment for money in a civil action."

"Sec. 8006. If the judgment is for the payment of fine, or costs, or fine and costs, only, execution may be issued thereon as on a judgment in a civil action.

"Sec. 8007. If the judgment is for imprisonment, or a fine and imprisonment until it be paid, defendant must forthwith be committed to the custody of the proper officer, and by him detained until the judgment is complied with."

By the restriction of the issuance of execution for the recovery of fines to cases of judgment for a fine, or costs, or fine and costs only, it follows that when a judgment is for fine and imprisonment until paid, or for absolute imprisonment coupled with a fine, no execution can be issued upon it.

The crime of which appellant was convicted is punishable by fine and imprisonment, not by one or the other, but by both. (Sess. Laws, 1915, chap. 11, sec. 18, p. 46.) If a judgment cannot direct that the defendant stand committed after the expiration of the time of imprisonment until the fine be satisfied, the provision that he be both fined and imprisoned is rendered nugatory for the reason that the payment of the fine is left entirely to the prisoner's volition. The legislature has failed to provide means by which a judgment, both for absolute imprisonment and the payment of fine in addition thereto, may be made effective unless the provisions of sec. 7994 are applicable thereto. The omission of the word "only"

from this section appears significant in view of its presence in sec. 8006.

We hold, therefore, that it was the intention of the legislature that sec. 7994 should apply to judgments of absolute imprisonment, coupled with a fine, where the judgment also directs that defendant be imprisoned until the fine has been satisfied.

The provision that the maximum imprisonment shall not exceed six months applies only to the maximum sentence of absolute imprisonment. It does not limit the power of the judge to impose a fine up to the maximum amount provided by statute, nor is there any limitation upon his power to direct that the defendant be imprisoned until the fine is paid, except that the time of such imprisonment cannot exceed one day for each two dollars of the fine. These various statutes must be so construed as to give effect to all where there is no necessary conflict between them.

We find no error in the instructions complained of by appellant. The judgment is affirmed.

Budge, C. J., concurs.

MORGAN, J., Dissenting.—Some time ago I was assigned the task of preparing the opinion of the court in this case. A draft of an opinion was prepared, but my utmost efforts have not convinced the other justices of the soundness of my logic, nor of the wisdom of the decisions of the supreme court of the United States, ably expressed, in similar cases.

My views, which have been rejected by this court, have not been thereby modified. They are as follows:

On the night of August 13, 1917, appellant, who was traveling in his automobile in company with another man upon the public highway in Shoshone county from the direction of the Idaho-Montana line, was stopped by an officer, or officers, who searched the men and the automobile. The search of the automobile disclosed the presence therein of a quantity of whisky. Thereupon appellant and his companion were arrested. The latter was, upon preliminary examination, dis-

charged and the former held to answer in the district court, to an accusation of unlawfully transporting intoxicating liquor into Shoshone county in violation of sec. 15, chap. 11, Sess. Laws, 1915, p. 46. The trial resulted in a verdict of guilty, and from a judgment of conviction based thereon this appeal is prosecuted.

Prior to the trial appellant filed a petition in the district court reciting that one J. D. Foster, a deputy sheriff, and certain other deputy sheriffs whose names are to appellant unknown, forcibly, unlawfully, and without a search-warrant or any other authority of law, stopped him and searched his automobile and seized the whisky, "and that then and there and thereupon the said J. D. Foster and the said other deputy sheriffs forcibly, unlawfully, and without warrant or authority so to do arrested this defendant." At the hearing upon the petition it was stipulated that all representations of fact therein set out are true.

From the language employed in the petition no other conclusion can be reached than that the events mentioned transpired in the order stated, to wit: First, appellant was stopped while traveling on the public highway; second, a search of his person and automobile was made; third, whisky found in the automobile was seized; fourth, after the search for and discovery and seizure of the whisky—not before—appellant was arrested. (Words & Phrases Judicially Defined, vol. 8, p. 6953; Second Series, vol. 4, p. 904.)

From the stipulated facts, and from the testimony of deputy sheriff Foster at the trial, the conclusion is inevitable that the search was made for the purpose of discovering whether or not a crime was being committed and that the arrest was made by reason of the disclosures produced thereby. He testified: "I stopped—I flashed the car down. I stopped it. We had two cars stopped, one going east. I flashed the car down. I was standing down the road some little distance from where the other cars were. I climbed on the running-board of the car and I told him to get out of the car. I wanted to see if he had a gun as some of the other boys had that night. Mr. Anderson got out and I looked

him over, as well as the driver." At this point counsel for appellant asked, and was granted, permission to make cross-examination, which was as follows: "Q. Did you have a search-warrant that night for the search of Mr. Anderson? A. I had a copy of the state law, is all. Q. Copy of the state law is all. You refer to— A. —to search automobiles. Q. You had no search-warrant for the search of this car or person? A. Not that particular car, no. Q. Did you have a warrant for his arrest? A. I did not." After objection by appellant's counsel to any testimony as to facts, the knowledge of which was gained by means of this search, was made and overruled, the deputy sheriff further testified, upon direct examination: "A. After I had looked Mr. Anderson over, we talked a few minutes. He said he was just taking in a few bottles for his own use and he would not have been caught for five hundred dollars; that is the expression he made. I told him I wouldn't either. We came to Wallace. Q. Did you search the car at that time? A. I did. Q. What did you find in the car? A. Found ten cases marked whisky."

It is alleged in the petition that the officers took the whisky into their possession, that it was being kept for the purpose of being introduced in evidence at the trial, and that appellant's rights were being thereby invaded. The petition concludes with a prayer for an order that the liquor be forthwith destroyed and that no portion thereof be used as evidence; also that the court direct that neither of the officers, nor any other person in any wise connected with or present at the search and seizure, be used as a witness against appellant with respect particularly, to any fact the knowledge of which was gained or in any wise derived from, or by reason of, the search and seizure.

The petition was denied and that action of the court is brought here for review by bill of exceptions. Objections were made to testimony showing the facts disclosed at the time of, and by means of, the search and seizure and to the introduction of the liquor in evidence, and were overruled. At the close of the introduction of evidence on behalf of the state, counsel for appellant incorporated the same point in a

motion, which was denied, that the court direct the jury to find appellant not guilty. These rulings are assigned as error.

It is appellant's contention, among others, that the action of the officers, in making the search and seizure, was in violation of secs. 13 and 17, art. 1, of the constitution of Idaho, and that the evidence secured was inadmissible.

It is apparent the search was made pursuant to sec. 1, chap. 45, Sess. Laws 1917, p. 103, which is as follows:

"Whenever a sheriff or any other peace officer has probable cause to believe that intoxicating liquor is being transported or kept within the state of Idaho in violation of the law such sheriff or other peace officer is authorized and empowered to search, with or without a warrant, any depot, baggage-room, premises, building, satchel, suitcase, grip, trunk, receptacle of any kind, wagon, automobile, car, boat or vehicle of any kind wherein or whereby, in the opinion of such sheriff or other peace officer, intoxicating liquor is being concealed or transported in violation of the laws of this state."

The portion of that section which seeks to permit an officer, under the circumstances therein stated, without a warrant, to make search as therein sought to be provided for, is in direct violation of sec. 17, art. 1, of the constitution of the state of Idaho, which was copied from the fourth amendment to the federal constitution. It provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue without probable cause shown, by affidavit, particularly describing the place to be searched and the person or thing to be seized." It is provided in sec. 13 of that article, which was taken from the fifth amendment to the federal constitution: " . . . . no person shall be . . . . compelled in any criminal case to be a witness against himself. . . . . "

These sections had, more than five years prior to the adoption of our constitution, been construed by the United States supreme court, in case of *Boyd v. United States,* 116 U. S. 616, 6 Sup. Ct. 524, 29 L. ed. 746, and we are deemed to have

adopted them in view of the interpretation placed upon them by that court and with the intention that they receive a like construction. (*Stein v. Morrison,* 9 Ida. 426, 75 Pac. 246; *In re Schriber,* 19 Ida. 531, 114 Pac. 29, 37 L. R. A., N. S., 693.)

The Boyd case was one wherein the court had under consideration sec. 5 of the act of Congress approved June 22, 1874 (18 Stat. at L., 186), wherein it was attempted to be provided, in effect, that whenever, in the opinion of the attorney representing the government, in any suit or proceeding arising under the revenue laws of the United States, other than a criminal action, any business book, invoice or paper belonging to, or under the control of, the defendant, or claimant, would tend to prove any allegations made by the United States, he might make a written motion particularly describing such book, invoice or paper and setting forth the allegations which he expected to prove, and thereupon the court might issue a notice to the defendant, or claimant, to produce such book, invoice or paper in court, and if he fail or refuse to do so, the allegations stated in the motion would be taken as confessed, unless his failure or refusal be explained to the satisfaction of the court. That if the book, invoice or paper be produced, the attorney should be permitted, under the direction of the court, to make examination of such entries therein as related to or tended to prove the allegations above mentioned, and might offer the same in evidence on behalf of the United States.

The court held that the proceeding before it, being intended for the purpose of declaring a forfeiture of claimant's property by reason of an offense committed by him, though civil in form was criminal in its nature; that the order directing private books and papers to be delivered up to be used in evidence against him was within the scope of the fourth amendment, prohibiting unreasonable searches and seizures; that it was not substantially different from compelling him to be a witness against himself, prohibited by the fifth amendment; that the law which attempted to authorize such a pro-

ceeding was unconstitutional, and that the evidence secured pursuant to it was inadmissible.

The supreme court of Georgia, in *Williams v. State,* 100 Ga. 511, 28 S. E. 624, 39 L. R. A. 269, discussing a constitutional provision like our sec. 17, art. 1, while holding that an illegal and unreasonable search and seizure would not render evidence thereby procured inadmissible, said: "This wise restriction was intended to operate upon legislative bodies, so as to render ineffectual any effort to legalize by statute what the people expressly stipulated could in no event be made lawful; upon executives, so that no law violative of this constitutional inhibition should ever be enforced; and upon the judiciary, so as to render it the duty of the courts to denounce as unlawful every unreasonable search and seizure, whether confessedly without any color of authority, or sought to be justified under the guise of legislative sanction." To like effect is *Evans v. State,* 106 Ga. 519, 71 Am. St. 276, 32 S. E. 659; *State v. Fuller,* 34 Mont. 12, 9 Ann. Cas. 648, 85 Pac. 369, 8 L. R. A., N. S., 762; *Ripper v. United States,* 178 Fed. 24, 101 C. C. A. 152; *Silva v. State,* 6 Okl. Cr. 97, 116 Pac. 199.

Many decisions may be found, in addition to those last above cited, based upon a theory, with which I am not in accord, that evidence against a defendant in a criminal case, which is otherwise unobjectionable, will not be rejected because it has been procured in violation of constitutional provisions like these under consideration. Among them are *State v. Flynn,* 36 N. H. 64; *Shields v. State,* 104 Ala. 35, 53 Am. St. 17, 16 So. 85; *Gindrat v. People,* 138 Ill. 103, 27 N. E. 1085; *People v. Campbell,* 160 Mich. 108, 136 Am. St. 417, 125 N. W. 42, 34 L. R. A., N. S., 58; *State v. Sutter,* 71 W. Va. 371, 76 S. E. 811, 43 L. R. A., N. S., 399.)

Some of the decisions above cited announce the rule that a court will not pause in the trial of a criminal case to frame and try a collateral issue to determine the means by which evidence against the defendant was obtained. Upon this point may be added to the list, *Adams v. New York,* 192 U. S. 585, 24 Sup. Ct. 372, 48 L. ed. 575. However, that question is not

before us since in this case, as above stated, not only was objection made at the trial to the admissibility of evidence disclosed by the search and seizure, but prior thereto a petition for an order directing the destruction of the liquor and for the exclusion of testimony relative to its discovery was presented and denied.

This case is not unlike that of *Weeks v. United States,* 232 U. S. 383, Ann. Cas. 1915C, 1177, 34 Sup. Ct. 341, 58 L. ed. 652, L. R. A. 1915B, 834. In that case the United States marshal, without warrant, or other authority of law, searched the room of the defendant, who had been arrested without warrant and who was later indicted and convicted of having used the mails for the purpose of transporting certain coupons representing chances, or shares, in a lottery. It appears that certain other property belonging to him had been seized in a like search by police officers at about the same time. The defendant petitioned the court for the return of his property which was being held to be used in evidence against him. The trial court denied the petition so far as it related to articles pertinent to the matter charged in the indictment. Prior to the introduction of evidence the petition was again urged and was denied. Objection to the introduction in evidence of papers seized by the officers was made and overruled, and the defendant assigned as error the trial court's refusal to grant his petition for the return of his property, and its action in permitting it to be used in evidence against him. In an opinion reversing the judgment of conviction the United States supreme court said:

"The effect of the fourth amendment is to put the courts of the United States and federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers, and effects, against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our federal system with the enforcement of the laws. The tendency of those

who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the federal constitution, should find no sanction in the judgments of the courts, which are charged at all times with the support of the constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.

" . . . . If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the fourth amendment, declaring his right to be secure against such searches and seizures, is of no value, and, so far as those thus placed are concerned, might as well be stricken from the constitution. . . . . To sanction such proceedings would be to affirm by judicial decision a manifest neglect, if not an open defiance, of the prohibitions of the constitution, intended for the protection of the people against such unauthorized action." (See, also, *United States v. Wong Quong Wong,* 94 Fed. 832; *United States v. McHie,* 194 Fed. 894; *United States v. Abrams,* 230 Fed. 313; *Blacksburg v. Beam,* 104 S. C. 146, 88 S. E. 441, L. R. A. 1916E, 714; *State v. Height,* 117 Iowa, 650, 94 Am. St. 323, 91 N. W. 935, 59 L. R. A. 437; *State v. Sheridan,* 121 Iowa, 164, 96 N. W. 730.)

Chief Justice Hill of the court of appeals of Georgia, expressing the opinion of that court in *Underwood v. State,* 13 Ga. App. 206, 78 S. E. 1103, discussed constitutional safeguards such as are our secs. 13 and 17, art. 1, and the duties imposed upon courts thereby, in part as follows:

"The two provisions of the constitution which we have been discussing appear in the fundamental law of every state of this Union, as well as in the federal constitution. They are the sacred civil jewels which have come down to us from an English ancestry, forced from the unwilling hand of tyranny by the apostles of personal liberty and personal security. They are hallowed by the blood of a thousand struggles, and were stored away for safekeeping in the casket of the constitu-

tion. It is infidelity to forget them; it is sacrilege to disregard them; it is despotic to trample upon them. They are given as a sacred trust into the keeping of the courts, who should with sleepless vigilance guard these priceless gifts of a free government. We hear and read much of the lawlessness of the people. One of the most dangerous manifestations of this evil is the lawlessness of the ministers of the law.''

In order that the total disregard, disclosed by this record, of these constitutional safeguards may be effectual the court must become a party to it by receiving the results as proof. I decline to do so, and hold that evidence procured by an illegal and unreasonable search, the purpose of which was to discover and seize it, is inadmissible if timely and proper objection be made to its introduction, because it was procured by an invasion of the rights guaranteed to all persons within this state by sec. 17, art. 1, of the constitution, and to admit it, against a defendant in a criminal case over such an objection, would be a violation, by the court, of sec. 13 thereof.

These sections are guardians of American liberty and justice which come to us from the same source and with like sacrifice as did those, equally but not more greatly prized, whereby we are guaranteed religious liberty, trial by jury, the right to bear arms, to peaceably assemble, free speech, liberty of the press, and many other constitutional safeguards which, because they have been faithfully upheld by the courts, have accomplished more than has any other agency to make this government one which the peoples of the earth may profitably copy.

If the security of the person and the home are not protected by the constitution, the right to the exercise and enjoyment of religious faith and worship may be withdrawn. If unreasonable searches and seizures, without warrant, are to be permitted, trial by jury may be denied. If officers may, upon suspicion, search the persons and homes of the inhabitants of Idaho, the rights of the people to bear arms for their security and defense, to peaceably assemble, to freely speak, write and publish, are in danger. Whenever the courts lend

their sanction to the abolition of one of these sacred rights the fundamental principle, which forms the foundations of all of them, is cut away and our boast of free government becomes an idle waste of breath.

While a violation of the law against the transportation of intoxicating liquor into Idaho is by no means to be excused or minimized, and while perpetrators of that crime should be, as they are being, sought out, apprehended, convicted and punished, the means employed in so doing must not be such as are prohibited by the constitution, and the fact must not be lost sight of that the people of a state are in more real danger from a court of last resort which participates in the violation of its fundamental laws, even in order to bring a criminal to justice, than they are from the most persistent efforts of all the bootleggers at large.

It is not to be understood that every arrest made without a warrant is either a trespass or a violation of the law, nor that every search and seizure made without a search-warrant is prohibited by sec. 17, nor renders evidence thereby procured inadmissible because of the prohibitory provisions of sec. 13, art. 1, of the constitution. Whenever an officer has information which prompts him to believe, in good faith, that a public offense is being committed or attempted in his presence he may, without a warrant, arrest the perpetrator thereof, or the person attempting to commit the crime. Such arrest is justified because made upon reasonable and probable cause and is provided for by sec. 7540, Rev. Codes. The authorities are uniform in holding that search of the person arrested may be made by the person performing the arrest in order to deprive him of weapons, and this is recognized and provided for in sec. 7550, Rev. Codes. If in making such a search of one arrested the officer should discover, and take into his possession, evidence of the crime of which the former is accused, it is not rendered inadmissible, because found and taken without authority of a search-warrant, for such search and seizure is not unreasonable and, therefore, not prohibited by sec. 17, art. 1, nor would the evidence be objectionable, by reason of the provisions of sec. 13 of that article as com-

pelling the accused to give evidence against himself, since it would be taken and produced by the officer in the discharge of his duties, recognized, and the performance thereof directed, by law. In such a case the arrest must precede the search; the search must not be made in order to find out if one suspected of a crime has committed it with the purpose in view of arresting him in the event it discloses evidence of his guilt.

In view of the foregoing I do not deem it necessary to decide the other points presented, so express no opinion thereon.