Lawrence C. Wildy, Appellee, v. Newman Woodruff and George V. Gruenewald, Sheriff of St. Clair County, Appellants.

Term No. 4,505.

Heard in this court at the October term, 1945. Opinion filed January 7, 1946. Released for publication February 7, 1946.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, of East St. Louis, for appellants.

JOHNSON & JOHNSON, of Belleville, for appellee.

MR. JUSTICE BARTLEY delivered the opinion·of the court.

Lawrence C. Wildy, plaintiff appellee (hereinafter for convenience called appellee), recovered a judgment in the circuit court of St. Clair county, Illinois, in a trial before the court without a jury, against Newman Woodruff and George V. Gruenewald, sheriff of St. Clair county, Illinois, defendants appellants (hereinafter for convenience called appellants), for $3,000.

The basis of the suit by the appellee is the claim by him that the appellant, Woodruff, while a duly commissioned special deputy sheriff of St. Clair county, appointed and commissioned by appellant, Gruenewald, sheriff of St. Clair county, and while acting as such in directing traffic on a public highway known as Missouri avenue, negligently shot and discharged his revolver in such a manner as to cause a bullet discharged therefrom to strike the appellee in the head, and thereby caused him serious injury.

The appellants predicate their defense ·on the assertion that at the time of the occurrence in question, the appellant, Woodruff, was not acting as deputy sheriff nor for the defendant appellant, Gruenewald, sheriff of St. Clair county; that at the time and place of the occurrence in question, the appellee and the appellant, Woodruff, were respectively employees of companies subject to the Workmen's Compensation Act, and acting as such, that they are each bound by said Act, and that therefore appellee's rights are determined by such Act.

The acts of a deputy sheriff when acting by virtue of the office are the acts of the sheriff, and when acting as such officially the sheriff is liable for the negligent acts of such deputy. (Pars. 12 and 13, ch. 125, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 124.12, 124.13].)

■ ■ An injured employee cannot maintain a cause of action against a negligent third party who is bound by the Workmen's Compensation Act as such cause of action is by the Act transferred to the employer who is limited in his right of recovery to the amount of the award for which he has become liable, and a negligent third party who is an employee bound by the Compensation Act, is a "person bound" within the meaning of sec. 29 of the Act [Ill. Rev. Stat. 1945, ch. 48, par. 166; Jones Ill. Stats. Ann. 143.44] providing for the transfer of causes of action to the employer of the injured party. (*Thornton v. Herman,* 380 Ill. 341.)

At the trial of the cause, it was stipulated between the parties that the Aluminum Company of America (for convenience hereinafter called the Aluminum Company) which employed appellee, was engaged in a business which made them bound under the Workmen's Compensation Act of Illinois and placed appellee under that Act, so that at the time, both were under the terms of the Act. It was also stipulated that appellant, Woodruff, was an employee of the Aluminum Ore Company of East St. Louis (hereinafter for convenience called the Ore Company) at the time of the occurrence in question; that he was working for such company, and that the company and appellant, Woodruff, were under the provisions of the Workmen's Compensation Act, and that if he were acting as an employee of the company, he was under the terms of the Act. Appellee reserved the right to contend that the appellant, Woodruff, was acting as a special deputy sheriff at the time in question.

Appellant, very pointedly, in their brief state the issue before the court here for consideration:

"In this case there is only one question to be considered and that is, was appellant Woodruff an employee of the Aluminum Ore Company and acting as such at the time of the occurrence in question? If he

was, then there can be no question but that appellee's rights are determined by the provisions of the Workmen's Compensation Act of the State of Illinois."

Appellee in his brief, just as directly, meets the issue and says:

"In the first sentence of this argument, the defendants appellants have stated that the only question on the appeal is whether the appellant Woodruff was an employee of the Aluminum Ore Company and was acting as such at the time of the occurrence in question.

The contention of plaintiff appellee is that the defendant Woodruff, at the time and place of the occurrence, was acting in his capacity as a special deputy sheriff, and that therefore the findings and judgment of the trial court should be affirmed."

It appears therefore from the foregoing, that the sole issue for the determination of this court is whether the appellant, Woodruff, was, at the time of the occurrence in question, acting in pursuance of his capacity as deputy sheriff, or as an employee of the Ore Company.

Appellant, Woodruff, went to work for the Ore Company in August 1940, as a laborer, and on July 20, 1943, the date of the occurrence in question, he was a plant guard, having been such for about two years. The plant of the Ore Company was on the south side of Missouri avenue. The plant of the Aluminum Company was on the north side. On April 24, 1943, appellant, Woodruff, obtained a commission as deputy sheriff from appellant, Gruenewald. About 5:00 o'clock on the afternoon in question, he went on Missouri avenue to direct traffic, at the direction of the chief of the guards of the Ore Company. The company had two signs which said "Stop" and one was put on one side of the crossing and one on the other. At the time, some 1,500 to 2,000 employees of the Ore Company were leaving the plant to cross to the parking lot for the company on the north side. The cars

would then be driven out of the parking lot and come out on Missouri avenue and go either east or west. Appellant, Woodruff, was in the middle of the street where officials and employees were coming out of the plant. There was also other vehicular traffic on Missouri avenue. While appellant, Woodruff, was in the center of Missouri avenue, a truck came from the west going east on Missouri avenue. Appellant, Woodruff, blew his whistle to stop the truck. The truck did not stop, but ran towards Woodruff so that he had to run off of the street. He then fired a couple of shots in the direction of the truck. Appellee was crossing Missouri avenue, in the course of his duties as guard for the Aluminum Company, some two blocks east of appellant, Woodruff, and one of the shots struck him in the head above his left ear, causing him the injuries complained of. The truck did not stop. The Ore Company, at the time of the occurrence in question, had some 50 guards, seven of whom were commissioned as deputy sheriffs. The Aluminum Company had nine men as guards on the shift at the time of the accident, and at one time, it had as many as 13 on the shift. Appellant, Woodruff, wore the same uniform as the other guards of the Ore Company and of the Aluminum Company—Khaki pants, khaki shirt, and helmet. They all carried revolvers and wore company badges.

The appellant, Woodruff, worked at various duties as plant guard as might be directed by the chief of the guards, and when assigned to directing traffic, would do so for about 45 minutes and then return to the plant, or go on home if his time of work was up. He worked from December 1940, to the time he received his commission on April 24, 1943, as a plant guard without any commission, and did the same work as he did before he received his commission, at the same pay, and in no different manner, and under the direction of his chief of guards of the Ore Company. He knew appellant, Gruenewald, by sight only, received no

pay from him, did not take any instructions from him, nor did he report to him.

It is not clear as to just why the appellant, Woodruff, became a deputy sheriff. He testified that he had not been advised to become a deputy sheriff in order to perform traffic work on the highway, but was advised to become such so that if there were an accident, he would have the right to hold a man until the sheriff could get there and take care of it.

From the foregoing statement of facts as disclosed by the record, and from an examination of the record, we are satisfied that at the time of the occurrence in question, the appellant, Woodruff, was acting as an employee of the Ore Company in the course of his duties as such, and was not acting in the capacity of deputy sheriff of St. Clair county. Would the appellant, Woodruff, have acted as he did at the time of the occurrence in question, if he were not clothed with a commission as deputy sheriff? The obvious answer to this question is yes. He was performing the same duties in the same manner as he had been before he became deputy sheriff; he received no directions as to his work by the sheriff either before or after receiving his commission; he was paid by the Ore Company, at the same pay and in the same manner all of the time, as were all of the other guards, whether commissioned as deputy sheriffs or not. This was true of the other guards of the Ore Company and the Aluminum Company, some of whom performed the same duties in direction of traffic as he did. He wore the same uniform, carried a like revolver, and wore a like badge, as did all of the other guards of the Ore Company and the Aluminum Company, all of whom were directed and assigned in their work by the chiefs of guards of the respective companies. His work, excepting 45 minutes of the working day when he was directing traffic, took him in the boundaries of the plant of the Ore Company. It is apparent that the duties of the appellant, Woodruff, as an employee of the Ore Com-

pany, were the same as the other guards of the companies. These duties were to guard and protect the plant and personnel of the company, which included the protection, as assumed by the Ore Company of its personnel while crossing Missouri avenue to go to the parking lot for the Ore Company, and these duties had no relation to his office of deputy sheriff.

It follows therefore that the judgment of the trial court will be reversed.

The conclusions we have reached are supported by the case of *Chicago & I. Midland Ry. Co. v. Industrial Commission*, 362 Ill. 257.

The judgment of the trial court is reversed and remanded with directions to find the issues in favor of the defendants, and to enter judgment in favor of the defendants and against the plaintiff and judgment for costs against the plaintiff.

*Reversed and remanded with directions.*

STONE, P. J., and CULBERTSON, J., concur.