(No. 22982.—

THE CHICAGO AND ILLINOIS MIDLAND RAILWAY COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOHN A. THOMAS, SR., Defendant in Error.)

*Opinion filed December 16, 1935—Rehearing denied Feb. 5, 1936.*

WALTER M. PROVINE, and CLARK H. MILEY, for plaintiff in error.

HODGES & TRAGETHON, for defendant in error.

Mr. JUSTICE WILSON delivered the opinion of the court:

John A. Thomas, Sr., filed an application with the Industrial Commission seeking compensation for injuries sustained on September 10, 1933, while guarding a railroad bridge of the Chicago and Illinois Midland Railway Company. The county of Sangamon was also made a respondent. The arbitrator entered an award of $636.43 in favor of the applicant and against the railway company. He further found that Sangamon county was not the employer of the petitioner and that it was not liable for compensation under the Workmen's Compensation act. The Industrial Commission, on review, sustained the award and dismissed the county as a party respondent. On *certiorari* the circuit court of Sangamon county confirmed the decision of the Industrial Commission. The cause is here on a writ of error granted by this court.

The Chicago and Illinois Midland Railway Company (hereinafter referred to as the Midland) assigns error on the theory that the facts fail to show that Thomas was its employee, and that even if he was, he was, nevertheless, engaged in interstate commerce when injured.

The Midland, a corporation, is a common carrier whose lines lie entirely within the State of Illinois. For a considerable period of time prior to July 5, 1933, the Midland had sustained damage to parts of its line of track in Sangamon and adjoining counties by reason of the explosion of bombs placed along its right of way by persons unknown. The Midland acquainted the sheriff of Sangamon county with these facts and requested protection of its property, but this request was refused. Early on the morning of July 5, 1933, a bridge over the Sangamon river, in Sangamon county, was damaged by the explosion of a dynamite bomb. Another appeal was made to the sheriff, and it was agreed that the county would furnish guards to protect the Midland's bridge. At this time F. H. Stubblefield was the chief special agent of the Midland in charge of protecting its property, and previous to July 5 he had employed certain men to guard the lines of track of the Midland and its property. Thomas testified that he saw the account of the bombing in a newspaper and went to the offices of the Midland and asked for Stubblefield and was told he was not in; that he went back about 5:00 o'clock in the afternoon and was told by Stubblefield that they were going to put on some guards and to report at the sheriff's office about 7:00 o'clock; that he went there, was given a star and sent to the bridge with two other men, but nothing was said about becoming a special deputy, and that he was directed by Stubblefield to protect the bridge. He was told that he would be paid two dollars a day for his services. Thomas went to the bridge that night and remained there until the next morning attending to his duties. From his testimony it appears that two days later he was informed he would have to get a commission from the sheriff's office; that he went there, made out some papers, had a bond signed and obtained his commission; that from July 6 until September 10 Stubblefield came to the bridge and gave him orders, directing him to report the

trains and motor cars that passed over the bridge; that he put down the engine number, the direction and the time in a book and gave signals with a flash-light during the night time; that he made out his reports every morning on forms furnished by the Midland, and these were turned in to the sheriff's office; that he would receive a warrant for his wages, and would take it, with the time-slips, to the Midland, where he was paid; that he never did anything in the way of serving papers or performing any duty for the county but that his time and work were for the Midland and that he received his instructions from Stubblefield. It was while Thomas was stationed at the bridge that in attempting to get off of the bridge he slipped and fell and his leg was broken, which is the injury for which he seeks compensation. On cross-examination Thomas testified further that he supposed he was employed by the Midland since he obtained his job from Stubblefield.

The Midland admitted the payment for services to Thomas but took the position that by reason of the assignment of the county warrants it was advancing his wages, and that Thomas was, in fact, an employee of the county. Lee Leonard, a witness called for the Midland, testified that he was a regular deputy sheriff of Sangamon county acting as office clerk; that Stubblefield was also a special deputy; that he saw Thomas in his office when he was appointed, gave him a star and told him that he was to protect the property of the Midland; that he made out the bills for Thomas' time and certified that Thomas was serving as a special deputy and that the money was due and owing him from Sangamon county; that Thomas then took the warrants to the Midland and assigned them, as had been previously arranged, so that the men would get their money every two weeks instead of waiting three months until the board of supervisors met and passed on the bills. This is the only testimony concerning the payment of wages to Thomas other than that already stated.

There is no testimony showing that the money paid by the Midland was subsequently paid by Sangamon county or received by the Midland.

The first question resolves itself into one of fact as to whether or not Thomas was actually employed by the Midland Railway Company, or, if employed by the county, was loaned to the Midland for the purpose of permitting him to work in and about the Midland's business.

In support of the position taken by Thomas, the significant facts are that he was in the first instance employed by Stubblefield, the chief agent of the Midland, and by him directed to proceed to the sheriff's office in order to obtain a star before going to work; that he did work for the Midland two or three days before obtaining his commission; that after obtaining his commission he continued at work, and in addition to guarding the bridge he signaled trains, and kept a record of the trains and motor cars passing over the bridge, which he turned in to the Midland. Significant, also, is the further fact that he obtained his money or wages from the Midland direct, even though he did assign his vouchers to that company.

Under the Compensation act, as amended in 1921, it becomes the duty of the Supreme Court to consider the evidence contained in the record, but this court will not substitute its judgment for that of the Industrial Commission, particularly where it has received the endorsement of the circuit court, unless the judgment is clearly and manifestly against the weight of the evidence. (*American Smelting Co.* v. *Industrial Com.* 353 Ill. 324.) It is not the province of this court to weigh conflicting evidence and substitute its judgment for that of the Industrial Commission unless the court can say that the finding of the commission is manifestly against the weight of the evidence. (*Armour Grain Co.* v. *Industrial Com.* 323 Ill. 80.) Even though Thomas may have been an employee of Sangamon county, there are facts in the record from which it could

have been inferred that he had been loaned to the Midland, inasmuch as the duties imposed upon him were those that partook of the character of the business transacted by the Midland in keeping a record of the cars passing over the bridge, signaling the on-coming trains, and making out and submitting his reports to the Midland. This latter classification of the work done by him was not such as would necessarily devolve upon him because of his duties as a deputy sheriff. *Forest Preserve District* v. *Industrial Com.* 357 Ill. 389; *Allen-Garcia Co.* v. *Industrial Com.* 334 id. 390.

There is no force in the position taken by the Midland, namely, that Thomas at the time of the injury was engaged in interstate commerce. The property of the Midland was wholly within the boundaries of the State of Illinois. Its business in the first instance was an intrastate business. Such a corporation is subject to the Compensation act. In order to avoid liability under this act and to relieve itself of liability because of interstate commerce it has the burden of showing that the work being done at the time of the injury was of such a character as to constitute interstate commerce. (*Goldsmith* v. *Payne,* 300 Ill. 119; *Payne* v. *Industrial Com.* 296 id. 223.) There was not sufficient evidence to sustain the position of the defendant in error in this regard. Whether or not Thomas was engaged in a transaction involving interstate commerce at the time of the injury was one of fact, and this question was resolved in favor of Thomas both by the Industrial Commission and the circuit court, and we see no reason for disturbing their finding.

For the reasons stated in this opinion the judgment of the circuit court is affirmed.

*Judgment affirmed.*