270 P.2d 837

**HUDSON v. ROBERTS et al.**

No. 8028.

Supreme Court of Idaho.

May 11, 1954.

O. R. Baum, R. Max Whittier, and Ruby Y. Brown, Pocatello, for appellant.

Larry B. Adamson, Arco, Albaugh, Bloem, Barnard & Smith, Idaho Falls, for Everett H. Hudson.

Robert E. Smylie, Atty. Gen., Glenn A. Coughlan, Asst. Atty. Gen., for State Ins. Fund and Bingham County.

H. William Furchner, Blackfoot, for Village of Atomic City.

KEETON, Justice.

Claimant, respondent Everett H. Hudson, while in the employ of Max Roberts, whose surety under the Workmen's Compensation Law, I.C. § 72–101 et seq., is the United States Fidelity & Guaranty Company, received an injury during his regular hours of employment, while he was on duty on the employer's premises performing the work for which he was employed.

At the hearing before the Board, and on appeal, employer and surety contend, among other things, that the injuries for which compensation is sought did not arise out of the course of the employment; that at the time the injuries were received, claimant was acting as a peace officer, marshal of the Village of Atomic City, and/or as a deputy sheriff of Bingham County; that the injuries suffered are not compensable.

At the time of the injuries complained of claimant was employed as a bartender and clerk in the Twin Buttes Bar & Cafe in Atomic City. While on duty and when there were eighteen or twenty persons in the barroom, a third person, unconnected with the establishment, one Clyde Gish, appeared on the sidewalk in front of the bar with a rifle, the muzzle of which was thereafter thrust through the door into the interior of the barroom where claimant was working. Claimant testified that Gish came to the front door waving a gun and was going to shoot everybody; that he acted like a maniac, and was raving and waving the gun in the air. While in the act of attempting to secure possession of a pistol to protect himself, the customers therein, or both, or the employer's property, claimant was wounded by a rifle bullet fired from the sidewalk through the window, by Gish. Immediately prior to the wounding of claimant, Gish had shot and killed a man named McAvoy, who had attempted to disarm him.

Appellants contend that the evidence established that the assault made by Gish on claimant, and which resulted in claimant's injuries, was motivated by spite, ill will, or a desire for personal revenge for real or imaginary wrongs committed by claimant; that the assailant had no purpose in coming to the barroom where claimant was working except to inflict bodily injury on him; that the assault was personal to claimant and unconnected with the employment; and contend the harm and injuries suffered by claimant would, or could have occurred at any other place where the claimant might be. In other words, appellants contend that the injuries suffered were not occasioned by a hazard of the job or the place of employment.

Immediately prior to the appearance of Gish, Mrs. Gish, his wife, had approached the bar and told claimant (according to his testimony) that Gish was coming over to shoot him and a number of other men whom she mentioned, some of whom were in the barroom at that time. Claimant testified:

"She said her husband had been beating up on her and she says, I told him I had been playing around with you, and she mentioned about five or six other men, and she said the reason I told him this was so he would leave me alone, and she said he grabbed his gun and started for town. That probably isn't the exact wording, but I can't remember her exact words."

The deceased McAvoy was in the place of business when Gish appeared in front of the building with the gun, and went outside to remonstrate with and disarm him. In the struggle which ensued McAvoy was shot and killed.

Other witnesses testified that Gish, while outside the building, spoke through the open door and said to claimant: "Come on out I am going to shoot you."

While outside the building, speaking to, and pointing the gun through the door at Mrs. Gish, Gish directed her to admit intimacies with claimant and two or three others, "He pointed the gun at her and I guess she was scared and she said 'yes'".

There were witnesses who testified to facts from which a reasonable inference or deduction might be made that the attack on the place of business and those therein was a general invasion or trespass, and with an intent, on the part of Gish, to shoot several customers then in the barroom; that his malice was not directed exclusively to an assault on claimant.

In testifying as to Gish's actions at the time in question the witness Barnes said:

"Well he was just yelling and he was going to shoot everybody.

"Q. Is that what he said? A. He was going to shoot Mr. Becker and he named over several he was going to shoot."

Witness Zimmerman testified:

"He came toward us with the gun, he had the gun pointed toward the wall, and he told us he had shot two guys already and he was after Eddie's wife.

"Q. What did he say to Roberts to the effect that he wasn't going to shoot him? A. When we came to the back door, he was up to the front, and he told us we could come in, he wasn't going to shoot us.

"Q. At that time, what did Gish say? A. He said something about he was looking for Hudson's wife and wanted to know where Hudson's wife was. We said we didn't know and we turned around and went to the back and when we got to the back he was at the front door.

"Q. What did he say? A. He said we could come on in, he wouldn't shoot us.

"Q. Did you say he wanted to shoot somebody else? A. Yes, he said he wanted to shoot Vern Nelson.

"Q. Was he in the cafe? A. Yes. (The cafe referred to was in the same building as the bar)

"Q. Did he say he wanted to shoot anyone else? A. He mentioned Becker and Vern Nelson."

Relative to the actions of other persons in the bar at the time the witness testified:

"Q. Did they all run for cover? A. Most of them did as quickly as they could. It was hard to get out of the way, you couldn't cross the room because if he shot down the center of the room,—most of them just backed off."

As to the conduct of the claimant, the witness Roberts testified:

"Q. Then what did Eddie [claimant] do? That's when Gish hollered for Eddie to come out, and I believe he [claimant] said, 'What's the matter, are you crazy?' and stepped back against the wall."

*    *    *    *    *    *

"Q. Did you hear Mr. Gish say he was going to shoot several different persons? A. Well, yes, he said something about,— * * * he said he was going to straighten out several things with some of them,—I think he named out Eddie and Shorty Nelson and, I don't know, it seems like there was another one or two,—I think Becker."

As to the nature of the employment and the duties of the claimant at the time he suffered the injuries inflicted, both claimant and employer testified that it was claimant's duty, among other things, to preserve order. The employer testified:

"Q. Would Mr. Hudson [claimant] still be in line of duty in attempting to quiet down a disturbance? A. Yes.

"Q. Would he have any authority from you to use any source he needed to do that? A. Well he would, yes, to a certain extent if they got behind control. That's what we are for, to keep order.

"Q. And that is partly what Mr. Hudson was hired for? A. He was hired to help with everything,—everything in general.

"Q. When you say he had to keep order, that was in the place of business, was it not,—that was inside the building he was to do that? A. Yes."

The Board found that claimant received a personal injury caused by an accident arising out of and in the course of his employment by appellant Roberts, and entered an award favorable to him.

■ It may be stated as a general rule that where an employee is assaulted and injury is inflicted upon him through animosity and ill will arising from some cause wholly disconnected with the employer's business or the employment, the employee cannot recover compensation simply beause he is assaulted when he is in the discharge of his duties. Under such circumstances the injury does not arise out of the course of em-

ployment, and the employment is not the cause of the injury although it may be the occasion of the wilful act, and may furnish the opportunity for its execution. Ramos v. Taxi Transit Co., 276 App.Div. 101, 92 N.Y.S.2d 744; Id., 301 N.Y. 749, 95 N.E.2d 625; Dallas Mfg. Co. v. Kennemer, 243 Ala. 42, 8 So.2d 519; Kentucky Fluorspar Co. v. Wolford, 263 Ky. 471, 92 S.W.2d 753; Ashley v. F-W Chevrolet Co., 222 N.C. 25, 21 S.E.2d 834; Martin v. Sloss-Sheffield Steel & Iron Co., 216 Ala. 500, 113 So. 578; January-Wood Co. v. Schumacher, 231 Ky. 705, 22 S.W.2d 117, Syl. 4; Long v. Schultz Shoe Co., Mo.App., 257 S.W.2d 211; Ries v. De Bord Plumbing Co., Mo.App., 186 S.W.2d 488; Bridges v. Elite, Inc., 212 S.C. 514, 48 S.E.2d 497; Brookhaven Steam Laundry v. Watts, 214 Miss. 569, 55 So.2d 381, 59 So.2d 294; Service Mutual Insurance Co. of Texas v. Vaughn, Tex.Civ.App., 130 S.W.2d 392; Stanolind Pipe Line Co. v. Davis, 173 Okl. 190, 47 P.2d 163; Cordell Milling Co. v. State Industrial Commission, 173 Okl. 195, 47 P.2d 168.

Some states have statutes applicable to the situation here discussed; and in those states which have the same or similar applicable statutes as those of Idaho, the cases deciding similar situations are not in accord. Many decisions recognize exceptions or qualifications to the general statement made. A collection of cases and review of them may be found in 15 A.L.R. 594, 35 A.L.R. 563; 112 A.L.R. 1268.

When a wilful injury is inflicted upon a workman while performing the tasks he is hired to perform, and such assault is not motivated by personal animosity, unconnected with the employment, directed against the one on whom the injury is inflicted, such wilful and criminal assault by such third person is generally to be regarded as accidental and as having arisen out of and in the course of employment. Especially is this true where the nature of the employment is such as naturally to invite an assault or when the employee is exposed to an assault by the character of his work; or when he is protecting or in charge of his employer's property. Injuries arising from such an assault are generally considered a hazard or special risk of the employment and compensable. Rosmuth v. American Radiator Co., 201 App.Div. 207, 193 N.Y.S. 769; Industrial Comm. v. Pueblo Auto Co., 71 Colo. 424, 207 P. 479, 23 A.L.R. 348; Hartford Accident & Indemnity Co. v. Hoage, 66 App.D.C. 160, 85 F.2d 417; Selser v. Bragmans Bluff Lumber Co., La. App., 146 So. 690; Sweeny v. Sweeny Tire Stores Co., 227 Mo.App. 93, 49 S.W.2d 205; Beem v. H. D. Lee Merc. Co., 337 Mo. 114, 85 S.W.2d 441, 100 A.L.R. 1044; Clark v. Industrial Comm., 356 Ill. 641, 191 N.E. 209; King v. Camden Pav. Co., 168 A. 167, 11 N.J.Misc. 762; Berresi v. Ryan, 242 App. Div. 279, 275 N.Y.S. 370; Hartford Accident & Indemnity Co. v. Cardillo, 72 App. D.C. 52, 112 F.2d 11 and 71 App.D.C. 330,

109 F.2d 674; Lange v. Eureka Printing Works, 108 N.J.L. 223, 157 A. 253.

In an annotation, 112 A.L.R. 1262, the rule is summarized by the annotator as follows:

"Where there is some causal connection between the employment and the assault, or where the conditions of the employment have the effect of exposing the employee to an assault, it is generally held, in the absence of extenuating factors, that the injury is compensable."

In the situation here being considered, a disturbance or trespass in or on the premises might reasonably be expected and as stated by the employer, it was claimant's duty to preserve order.

The Board found that after McAvoy had been shot and killed by Gish, claimant, to protect the premises, went over to a drawer near the bar to get a gun which was kept there by employer Roberts, and while in said act the injury complained of was inflicted by Gish by a rifle bullet fired through the body of claimant; and that the accident causing the injury was one that arose out of and in the course of his employment by Roberts, and "that claimant's action and conduct at the time of his accidental injury herein were solely in the interest of his employer Max Roberts and were solely in connection with his employment as a bartender for said employer." Thus by its findings, the Board negatived the contention that the assault was personal to claimant and motivated by spite, ill will or purposes of revenge directed against him.

The facts on this issue being in conflict, it was the province of the Board as a fact finding body to determine the issue. We are unable to conclude as a matter of law that the findings so made are not sustained by competent and substantial evidence.

At the time of the injuries inflicted on claimant he was a marshal of Atomic City, receiving $25 a month, also a special deputy sheriff, without fixed salary, of Bingham County. Appellants contend that in suppressing, or attempting to suppress the invasion of the premises, and protecting, or attempting to protect himself or persons then in the place of business, or the employer's property, claimant was acting either as a deputy sheriff or marshal, and argue that the liability, if any, is that of Atomic City or Bingham County, or both. The facts on which this contention is based were all submitted to the Board, which resolved the issue contrary to appellants' contention. It is not unusual for an employee to be employed in a capacity such as night watchman, janitor, or one engaged in protecting property, or performing other duties, to also have the status of a law enforcement officer.

In the instant case, the Board found that claimant's primary duty at the time and

place of the injuries was the protection of the property and place of business of the employer Roberts.

■ Where the duties of private employment are the primary purpose of the employment, it is generally held that such private employer is liable for an industrial accident. Rainbow Gardens v. Industrial Comm., 186 Wis. 223, 202 N.W. 329; Chicago & Illinois Midland Ry. Co. v. Industrial Commission, 362 Ill. 257, 199 N.E. 828; Wilson Berger Coal Co. v. Metcalf, 231 Ky. 93, 21 S.W.2d 112; In re McPhee, 222 Mass. 1, 109 N.E. 633.

■ In the case before us the Board found that claimant, while protecting his employer's place of business and property, was acting within the scope of his employment for Roberts, and that the relationship of master and servant which existed between claimant and Roberts was not altered by reason of the fact that claimant was also a marshal and/or deputy sheriff at the time. This finding is sustained by competent and substantial evidence.

The Board having found the facts, even though admittedly in conflict, and the Board being the fact finding body, this Court cannot as a matter of law disturb such findings and reverse the conclusion so reached. Art. 5, Sec. 9 of the Idaho Constitution. We find no error. The order is affirmed. Costs to respondent.

. PORTER, C. J., and GIVENS, TAYLOR and THOMAS, JJ., concur.